# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TIFFANY COLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-00246-KD-M |
| | ) |
| MOUNTAIN VIEW | ) |
| MARKETING, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on defendant Mountain View Marketing, Inc.'s (Mountain View's) motion for summary judgment, brief in support, and evidentiary submissions (docs. 52-55), the response filed by plaintiff Tiffany Cole (Cole) and evidentiary submissions (doc. 57), and Mountain View's reply (doc. 58). Upon consideration and for the reasons set forth herein, the motion for summary judgment is GRANTED.

I. Background

On May 4, 2009, Cole filed a complaint against her former employer Mountain View. Cole brings one count wherein she alleges that Mountain View discriminated against her on basis of her gender when she was terminated from employment on April 7, 2008. Cole alleges that Mountain View's action was in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq. Cole seeks declaratory, injunctive and equitable relief, punitive damages, and attorneys' fees and costs.

The action is now before the Court on Mountain View's motion for summary judgment. Mountain View argues that Cole did not file her charge of discrimination with the Equal Employment Opportunity Commission within 180 days of her termination and that Cole's

1

position was eliminated due to a reduction-in-force (RIF) but not for discriminatory reasons.

II. Findings of fact

A. Cole's employment

At all times relevant, Cole lived in Daphne, Alabama and worked for Mountain View (doc. 53, Mountain View's statement of undisputed facts, p. 2). Cole began to work for Mountain View as a "District Sales Manager/Master Sales Rep" on June 27, 2005 (doc. 57-8, Cole's Exhibit 7, letter of offer of employment from Mountain View dated June 13, 2005). In July or August 2005, Cole was promoted to District Manager (DM) (doc. 57-13, at p. 17, Cole deposition). Initially Cole reported to Bob Winegar in Atlanta, Georgia, but at the time of termination Cole reported to RM Darryl Morrison in Denver, Colorado (doc. 53, p. 3). At the time of employment, Mountain View had three Regional Managers (RM) and three sales regions: West, Northeast and Southeast (id., p. 3). Cole worked in the Southeast region (id., p. 4).

In 2007, Mountain View created Senior Sales Manager (SSM) positions for each of the three sales regions and Cole was promoted from DM to SSM for the Southeast region in June 2007 (doc. 53, p. 3). Later, Mountain View created a fourth sales region in the Southwest, creating a fourth SSM position, but kept only two RMs (id., p. 4, n. 2).

In making the decision to promote Cole, Morrison narrowed the field to two applicants Keith Kelsey and Cole and notified Keith Gudmundsen, Vice President of Sales, and two other RMs – Phil McCarrell and Tom Rogers about his decision (doc. 57-14, p. 7-8, Morrison deposition). The decision to promote Cole was made by Gudmundsen, and the three RMs (doc. 53, p. 3). Male DMs were promoted to SSM positions for the Northeast and West regions (id., p. 3). Cole's duties were to manage four DMs and approximately forty retail sales representatives and she reported direct to Morrison (RM) (id., p. 4).

B. Reduction-in-Force

Later in 2007, after Mountain View began to show an overall loss in profits, Gudmundsen reduced route sales representatives by six to eight people and ultimately eliminated three DM positions (doc. 53, p. 5, doc. 54-3, p. 18-21, Gudmundsen deposition). After those reductions, Mountain View decided that "based on the number of DMs that [it] expected to report to a senior sales manager that [reduction] would leave [Mountain View] with one too many senior sales managers" (doc. 54-3, p. 21-22). Mountain View decided to eliminate one SSM manager position, Cole's, and consolidate the four sales regions into three (doc. 53, p. 5; doc. 54-3, p. 26-27). Also, at the time of the decision, Mountain View had reduced the number of RMs from three to two (doc. 53, p. 4-5).

C. Termination

Gudmundsen testified that the decision to terminate Cole was ultimately his decision but Tom Rogers and Darryl Morrison were involved (doc. 53-3, p. 26). Gudmundsen testified that the decision as to which of the four SSMs to terminate was narrowed to Cole and male SSM Jon Avedissian (Northeast region) because the other two male SSMs had seniority over Cole (id., p. 31-32). Gudmundsen testified that the "geography lined out much better keeping Jon, that it did keeping Tiffany" (id., p. 32-33). Gudmunsen explained that "geography" meant looking at where the main accounts were physically located (id., p. 35). Gudmundsen testified that Cole had only one main account near where she lived but "there were some that were close enough she might drive to them" in "four to five hours" but Avedissian had about seven accounts in his area to which "he could drive to and from in a day, and do a meeting" (id., p. 34-35).

Cole was working as a SSM at the time of her termination on April 7, 2008. She was notified of the decision to terminate her employment by way of a telephone conference call with

Gudmundsen and Morrison (doc. 57-13, p. 24-26, Cole deposition).

Cole testified that she was told by Gudmundsen that the termination had "nothing to do with your job performance, its equally as good as the other three. You just live in the wrong place geographically." (doc. 57-15, p. 25). Cole testified that she was told by Morrison that the termination "had nothing to do with [her] personally, that [she] was a great employee, but geographically [she] just lived in the wrong place. . ." (id.). Cole testified that she thought someone else would have been terminated because her sales and "performance were as good, if not better, than the rest of them." (id. p. 26).

At the time of the decision to terminate, Mountain View still had four sales regions and four SSMs: Cole and three males (doc. 53, p. 4-5). Cole's duties were reassigned among the three remaining male SSM's (doc. 53, p. 5; doc. 54-3, p. 26-27). By January 1, 2009, Cole's SSM position was eliminated in its entirety (doc. 53, p. 6).

D. Charge with the Equal Employment Opportunity Commission

On or about August 20, 2008, Cole contacted the EEOC office in Mobile, Alabama by telephone to inquire about filing a charge of discrimination (doc. 57-1, Cole's Affidavit). The person with whom she spoke told Cole that she could come to the office or "make a claim online by going to the EEOC website." (doc. 57-1). On Friday, September 12, 2008, Cole went to her attorney's office and they looked for a charge form to complete but did not find one (id.). They found a questionnaire which Cole completed and e-filed with the EEOC that same day (id., doc. 57-2, questionnaire; 57-3, notice that the questionnaire was complete and had been sent to Phoenix, Arizona). On or about October 9, 2008, Cole received a voice message from Julie Hammer an employee with the EEOC office in Phoenix in regard to the questionnaire (doc. 57-1, p. 3). Cole returned the call and told Hammer that the information in the questionnaire was

4

correct (id.). Hammer told Cole that she would mail a document for Cole to sign to verify the allegations (id.). On or about October 30, 2008, Cole received an envelope from the EEOC which contained among other items a completed Charge of Discrimination which Cole signed an returned by mail (doc. 57-1; 57-5). At the last week of November 2008, Cole received a letter from Hammer with a stamped copy of the Charge showing that it had been filed (doc. 57-1; doc. 57-6). Then in early March 2009, Cole received a copy of the EEOC's Dismissal and Notice of Rights which was dated February 25, 2009 (doc. 57-1; doc. 57-7).

III. Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However,

the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004). Moreover, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (citation omitted).

 IV. Administrative exhaustion

  A. Conclusions of law

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice" to "fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a person believes that an unlawful employment practice has occurred, they must first seek a remedy through the administrative procedures of the EEOC by filing timely charge of discrimination with the EEOC and obtain a right to sue letter. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001); 42 U.S.C. § 2000e-5(f)(1). The administrative process typically begins with the filing of a charge of discrimination. See 42 U.S.C. § 2000e-5(e) (1). "Such a charge must be filed within a specified period (either 180 or 300 days, depending on the State) 'after the alleged unlawful employment practice occurred,' ibid., and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court, § 2000e-5(f)(1).'" Ledbetter v. Goodyear Tire & Rubber Co., Inc. 550 U.S. 618, 623-624, 127 S.Ct. 2162, 2165-2166, 167 L.Ed.2d 982 (2007) (parenthetical in original); Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (citation omitted). Filing a timely charge of discrimination with the EEOC is a condition precedent to filing a Title VII action in this Court. Zipes v. Trans World Airlines, Inc.,

455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

Under the law of the Eleventh Circuit, the Court may find that a verified intake questionnaire which includes the "basic information suggested by 29 C.F.R. § 1601.12(a) may constitute a charge for purposes of the Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1321 (11th Cir. 2001). In Wilkerson, the circuit court explained that the "manifest-intent approach requires a charging party to indicate clearly that she wishes to activate these functions" and "ensure[] that, once a charging party's intent is made clear, the EEOC's inaction will not vitiate her claim" but "not treat intake questionnaires willy-nilly as charges[.]" Id. at 1320-1321.

"To determine whether the intake questionnaire . . . can function as a charge", the circuit court requires analysis of the "following question: Would the circumstances of this case convince a reasonable person that [plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?" Id. at 1321. "Some facts relevant to [that] inquiry include what [the plaintiff] and EEOC personnel said to each other, what the questionnaire form itself indicated, and how the EEOC responded to the completed questionnaire." Id. Also, the Supreme Court has explained that whether the filing demonstrates "an individual's intent to have the agency initiate its investigatory and conciliatory processes . . . "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes[.]" Federal Exp. Corp. v. Holowecki, 552 U.S. 389, 402, 128 S.Ct. 1147, 1158 (U.S. 2008) (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1319 (11th Cir. 2001))

(other citations omitted) (explaining that if <u>Wilkerson's</u> formulation of "manifest intent" requires an objective determination, then "that would be in accord with [the Court's] conclusion").

　　　　B. <u>Analysis</u>

Mountain View argues that because Cole was notified of her termination via telephone at her home office in Alabama, the alleged discriminatory action occurred in Alabama on April 7, 2008. Mountain View argues that because Cole filed her EEOC charge in Utah, 207 days after her termination, instead of within the 180 day limitations period applicable to discrimination claims arising in Alabama, her charge was untimely. Therefore, Mountain View argues that Cole failed to properly exhaust her administrative remedies and her cause of action is barred by the statute of limitations. Mountain View also argues that Cole's questionnaire does not constitute a charge and therefore, does not toll the statute of limitation period.

Cole responds that she timely filed her charge because she initiated the process of filing a charge with the EEOC before the 180 day limitations period expired on October 4, 2008 by calling the EEOC on August 20, 2010, and following up on that call by filing on line on September 12, 2010. Cole argues that her actions clearly manifest an intent to activate the machinery of Title VII. Cole also argues that the EEOC decided where the charge would be filed and that she did not purposely file a charge in Utah, to avoid any statute of limitation.

Applying the manifest-intent test from <u>Wilkerson</u>, the Court finds that Cole's claim is not barred by the statute of limitation. First, Cole's questionnaire meets the basic requirements for an EEOC charge. The statute requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b); <u>see also</u> 29 C.F.R. § 1601.9 (" A charge shall be in writing and signed and shall be verified."). Although Cole did not verify her questionnaire, she did verify the

charge. In that regard, the EEOC regulations provide for curing technical defects or omissions "including failure to verify the charge" and that such amendments relate back. 29 C.F.R. § 1601.12(b). The EEOC regulations requires that

> [e]ach charge should contain . . . [t]he full name, address and telephone number of the person making the charge . . ., [t]he full name and address of the person against whom the charge is made, . . ., [a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices, . . . …, [i]f known, the approximate number of employees of the respondent employer . . ., and . . . [a] statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a)

Review of Cole's questionnaire indicates that this information was provided, but for a statement regarding the number of employees which was only required if known, and a statement regarding commencing proceedings before another agency. Thus, she substantially complied with the requirements.

Second, from the facts presented, a reasonable person could determine that Cole intended to activate the machinery of Title VII. Cole called the EEOC office on August 20, 2008 to inquire about filing a charge and was told she could file on line or in person.[1] Then Cole went to her attorney's office and tried to file a charge on line but found only the questionnaire which she filed on September 12, 2008. But for the fact that a charge of discrimination form was not available on line, it can reasonably be inferred that a charge of discrimination would have been

---

[1] When resolving a motion for summary judgment, the Court construes the evidence and the factual allegations in a light most favorable to the plaintiff. Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1187 (11th Cir. 1999) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.").

9

filed with the EEOC at that time. Also, the combination of the EEOC employee telling Cole that she could file a charge on line and Cole's subsequent finding of an EEOC questionnaire as her only option, leads to a reasonable inference that Cole intended to file a charge.

The Court acknowledges that the questionnaire "did not suggest that it was a charge." Bost v. Federal Express Corp., 372 F. 3d 1233, 1241 (11th Cir. 2004). However, unlike the questionnaire in Bost, the form completed by Cole, as provided to the Court, did not contain a Privacy Act Statement at the end which "stated that the questionnaire was not the equivalent of a charge of discrimination." Id. In Bost, the "Privacy Statement described the form as a means to decide whether the EEOC has jurisdiction over 'potential charges' and to provide 'pre-charge filing counseling.'" Id. Cole received a "send" completion notice which stated that the EEOC would contact her (doc. 57-3; "EEOC staff will take steps to promptly contact you either by phone or mail").

Also, in the part of Cole's questionnaire captioned "Incident Description and History", the question was asked – "What is the reason (basis) for your claim of employment discrimination?". In response, Cole stated "I was terminated due to my gender while less-qualified underperforming male co-employees were retained" and she identified by name the persons she believed were responsible. She also included a statement of the reasons given by Mountain View for the alleged discriminatory conduct, identified who made the statements, and the names of others similarly situated male employees who were treated more favorably.

Although Cole did not file a separate written statement specifically asking the EEOC to take action, as was the case in Wilkerson, an overall reading of her submission and her communications with EEOC employees clearly indicate that she intended for the Title VII process to begin. See Federal Exp. Corp. v. Holowecki, 552 U.S. 389, 404-405, 128 S.Ct. 1147,

10

1159 (U.S. 2008) ("Petitioner maintains the filing was still deficient because it contained no request for the agency to act. Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action. The design of the form in use in 2001, moreover, does not give rise to the inference that the employee requests action against the employer. Unlike EEOC Form 5, the Intake Questionnaire is not labeled a 'Charge of Discrimination,' see id., at 275. In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.' Id., at 265. There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.")

Mountain View also argues that Cole's charge should have been filed in Alabama because the alleged discriminatory act occurred here, i.e., Cole was in her home office when she was notified of the decision. However, the questionnaire form creates a dilemma for persons such as Cole who work in one state for a company located in another state. In Section B., captioned, "Organization Contact Information and Employment Data", Cole answered the operative question "Please use the address of the location you actually worked where the most recent incident occurred", by filling in the name of Mountain View as her employer with its Lindon, Utah address and the name of its Human Resources Officer (doc. 57-2). In other words, had she filled in her address in Alabama as the location where she "actually worked and where the most recent incident occurred", there was no other place on the questionnaire for Cole to provide the EEOC with Mountain View's address. Further, there is nothing in the questionnaire to inform the EEOC that Cole worked in Alabama. All this is clearly beyond Cole's control.

11

As to where to file a charge, the regulations state simply that a "charge may be made in person or by mail at any office of the Commission or with any designated representative of the Commission." 29 C.F.R. § 1601.8. The regulations do not require that a person file with an EEOC office in a particular state such as where they live or where their employer is based. See Federal Exp. Corp. v. Holowecki, 552 U.S. 389, 405, 128 S.Ct. 1147, 1159 - 1160 (U.S. 2008) ("While courts will use their powers to fashion the best relief possible in situations like this one, the ultimate responsibility for establishing a clearer, more consistent process lies with the agency. . . . To reduce the risk of further misunderstandings by those who seek its assistance, the agency should determine, in the first instance, what additional revisions in its forms and processes are necessary or appropriate."). Also, if appropriate, the EEOC can refer a charge to a state agency in another state or transfer a charge of discrimination to another EEOC office. 29 C.F.R. § 1601.13.

Also, Mountain View may not be correct in assuming that the alleged discriminatory conduct occurred in Alabama because Cole was in Alabama when she was notified of the decision. Mountain View admits that its home office is in Utah and that the decision to terminate Cole was made in Utah at the home office by Vice President Gudmundsen.[2] In a case addressing a statute of limitations issue, the Supreme Court explained as follows:

> In Ricks, we held that the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful. The fact of termination is not itself an illegal act. In Ricks, the alleged illegal act was racial discrimination in the tenure decision. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment

---

[2] The testimony indicates that Darryl Morrison participated in the conference call to terminate Cole and that he was based out of Colorado at that time. However, Gudmundsen testified that the decision to terminate Cole's SSM position was his decision.

rights. There were no other allegations, either in Ricks or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made.

Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29 (U.S. Puerto Rico, 1981) (internal citations omitted) (finding that the alleged discriminatory act occurred when the decision was made to deny tenure and not at termination of the existing teaching contract). The Supreme Court looked to the "time" of the discriminatory act and decided that discrimination occurred when the decision to deny tenure was made. Although Chardon did not involve a decision regarding the "place" of the discriminatory act, Chardon supports the premise that the alleged discriminatory act occurs where the decision is made.

The undisputed evidence shows that the decision to terminate Cole was made by Gudmundsen at the Mountain View offices in Utah and was based upon information made available to him there. Utah was where he reviewed the documents and had the conversations which formed the basis of his decision that Cole's position would be eliminated. That Cole was notified, i.e., terminated, in Alabama at her home office does not change that fact. Gudmundsen could just as easily have terminated, Cole while she was at one of her stores in any state in her sales region. Notifying Cole of the decision was simply the point at which the "consequences of the [allegedly discriminatory] act became painful." Id; see Higginbotham v. Delta Air Lines, Inc., 1992 WL 470700, *1 (N.D. Cal., September 11, 1992) (the "'purpose behind deferring to a section 706 agency is so that discrimination claims can be settled in the state where the discrimination occurred" and "where the alleged discriminatory acts took place in another state, plaintiff's residency is irrelevant."). Accordingly, the motion for summary judgment on basis that Cole failed to exhaust her administrative remedies is **DENIED.**

V. Legitimate, non-discriminatory reasons for termination

    A. Conclusions of Law

In a gender discrimination action where there is no direct evidence of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. Recently, the Eleventh Circuit Court of Appeals, explained this analysis as follows:

> Title VII prohibits employers from engaging in practices that discriminate on the basis of gender. 42 U.S.C. § 2000e-2(a). Absent direct evidence of an employer's discriminatory motive, a plaintiff may establish her case through circumstantial evidence, using the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). Under this framework, the plaintiff may establish a prima facie case of gender discrimination by showing that she "was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Id. In Holifield v. Reno, we recognized that "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).
>
> Once the employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its treatment of the employee. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). If the employer articulates such a reason, the burden shifts to the employee to "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual." Id. at 1024-25. "A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted). The plaintiff can meet her burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (quotation marks and citation omitted). To discredit the employer's explanation, the "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find all of those reasons unworthy of credence." Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir.1998) (quotation marks, citation, and alteration omitted).

Gresham v. City of Florence, Ala., 319 Fed. Appx. 857, 864-865 (11th Cir. 2009).

  B. Analysis

 In the motion for summary judgment, Mountain View concedes that Cole has made her prima facie case (doc. 53, p. 15). In her response, Cole concedes that she does not have direct evidence of gender discrimination and that she must "prove her case using the McDonnell Douglas paradigm." (doc. 57, p. 9). Cole also concedes that Mountain View has met its burden of production of legitimate, non-discriminatory reasons for its decision (doc. 57, p. 10). Therefore, the Court's analysis on the merits will begin with whether Cole has presented sufficient evidence from which a reasonable fact-finder could infer that Mountain View's proffered reasons are a pretext for discrimination.

 Mountain View argues that because of an overall reduction in force to reduce labor costs which resulted in a territory consolidation of four sales regions into three, one SSM had to be eliminated. Mountain View proffers that the decision was not made solely on basis of Cole's performance or upon consideration of her sales rankings but instead was based on seniority, the geographic location of key accounts, and performance. Mountain View explained that two other SSM's had seniority over Cole and exemplary performance so the decision was narrowed to Cole and Avedissian, the other remaining male SSM. Mountain View asserts that Avedissian did not have seniority, but did have more substantial key accounts in his region which he could contact more frequently (i.e., geography).

 Mountain View asserts that Avedissian had superior performance to Cole. In evaluating performance, Mountain View considered key account audit goals, expected route ride goals, and development, training and leadership of District Managers. Mountain View also considered that during the six months before termination, Cole failed to meet her key account audit goals twice

15

and failed to meet her route ride goals on one occasion while Avedissian met these every month. Mountain View was also concerned that Cole was not appropriately developing and training one underperforming DM in her region. Mountain View also concluded that Avedissian possessed more leadership qualities than Cole.

Mountain View argues that Cole cannot demonstrate that any of its stated reasons are a pretext for discrimination because her claim is based on her contention that her sales were as good as or better than Avedissian's and the other SSM's. Mountain View argues that it did not consider sales rankings but instead considered seniority, the geographic location of key accounts and performance as measured by meeting key account audit goals, expected route ride goals, and development, training and leadership.

Cole argues that the reasons are pretextual because they are inconsistent with and contradictory to the reasons given to her in the phone conversation with Gudmundsen and Morrison (doc. 57-10, transcript of conversation). Cole argues that Gudmunsen and Morrison both assured Cole that the decision had "nothing to do" with her performance, that she had "solid performance", and that the decision was based on geography but did not mention key account audit goals, seniority, route ride goals, or training or development of her DM's.

Cole also argues that an e-mail between Gudmundsen and the Human Resources manager for Mountain View provides evidence of pretext. Gudmundsen states in the email that in determining which SSM would be terminated, seniority was considered, as was achieving standard monthly expectations for SSMs, working with and developing the DMs, Cole's failing to meet her monthly account audit expectation twice in the past six months, and training of a subordinate DM. (doc. 57-12, e-mail). Cole considers all of these factors to be performance related, despite Gudmundsen's statement that her performance was not the issue. Cole also

points out that Gudmundsen does not mention geography or key accounts in the email. Ultimately, Cole argues that "Gudmundsen has offered two completely different explanations for his decision" (doc. 57, p. 12).

Cole also states that in making the decision Gudmundsen did not consider her superior sales performance which exceeded that of the three other male SSM's or the fact that she was given a difficult situation in supervising a DM who was hired from outside the company. Instead Gudmundsen selected factors which he knew would result in a negative impact on her, the only female SSM (doc. 57-9, sales ranking for February 2008). Cole argues that from this evidence, a reasonable jury could infer that gender was a motivating factor.

Viewing the evidence in the light most favorable to Cole as the non-moving party, the Court finds that she has failed to present sufficient circumstantial evidence from which a jury could reasonably infer that Mountain View's articulated reasons are a pretext for gender discrimination. Simply put, Cole fails to present sufficient evidence to show that the proffered reasons for the employment decision are unworthy of credence. Gudmundsen has consistently maintained that geography and seniority were the primary factors in the decision. Cole has not provided evidence to show that these reasons were false. Also, Cole does not dispute the proffered facts underlying the decision regarding her performance, such as difficulty training a subordinate DM or not meeting company goals. Gudmundsen and Morrison's failure to tell Cole that her performance was part of the equation, standing alone, does not support an inference that the real reason for the decision was her gender. Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'")

Also, Cole argues that the e-mail to Human Resources is inconsistent with

17

Gudmundsen's statement to Cole on the telephone because the email does not mention geography. However, although the word "geography" was not used, Gudmunsen begins the email by discussing the reduction of force and concludes that a consolidation of four Senior Sales Territories into three was necessary (doc. 57-12). Additionally, Cole's argument that the factors Gudmundsen relied upon to make the decision were discriminatory because the factors impacted her, the only female, is tantamount to challenging the wisdom of the decision, and not sufficient to support an inference that a discriminatory motive was the real reason for selecting the factors. Chapman v. AI Transport, 229 F.3d 1012, 1029 -1030 (11th Cir. 2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

Overall, the circumstantial evidence is not sufficient to "support an inference that [Mountain View] based its employment decision on an illegal criterion." Alphin v. Sears, Roebuck and Co., 940 F.2d 1497, 1500 (11th Cir. 1991) (citation omitted). Accordingly, summary judgment is GRANTED in favor of Mountain View.

### C. "Same Actor" inference

Mountain View also argues that because Gudmunsen, Rogers, and Morrison hired Cole, promoted her, and also terminated her, the inference that the decision was not motivated by discriminatory animus, i.e., the "same actor" inference, applies, and Cole cannot rebut that inference. Cole disputes this argument and argues that the same people who hired her are not the same people who fired her. Mountain View replies that the operative decision was the decision to promote Cole to SSM and that decision was made by the same people who made the decision

18

to terminate her: Gudmundsen and Morrison.

The Eleventh Circuit has explained that the fact that the same person hired or promoted the plaintiff, is the person who fired or demoted the plaintiff "gives[s] rise to a *permissible inference* that no discriminatory animus motivated" the defendant's actions.  Williams v. Vitro Services Corp., 144 F.3d 1438, 1443 (11th Cir. 1998).  However, in Williams, the Court appears to explain that the "same actor" inference need only be considered if the plaintiff can establish evidence of pretext such that would preclude entry of summary judgment  Id. (" it is the province of the jury rather than the court, however, to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh a plaintiff's evidence of pretext.").  Since Cole is not able to present sufficient circumstantial evidence from which a reasonably jury may infer that Mountain View's proffered reasons are a pretext for gender discrimination, the Court need not consider the applicability of the "same actor" inference.

VI. Conclusion

Upon consideration of the evidence, and for the reasons set forth herein, the Court finds that there is no genuine issue of material fact and Mountain View is entitled to judgment as a matter of law.  Accordingly,  Mountain View's motion for summary judgment is GRANTED.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this 4th day of  October, 2010.


                                           s / Kristi K DuBose
                                          KRISTI K. DuBOSE
                                          UNITED STATES DISTRICT JUDGE